IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 1:25cr00204-BYP-19 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE KNAPP |
| | ) | |
| KALEM WATTS, | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| Defendant. | ) | **ORDER** |
| | ) | |

Defendant Kalem Watts ("Defendant" or "Mr. Watts") has moved, apparently pursuant to 18 U.S.C. § 3142(f), to reopen his detention hearing and reconsider the granting of the Government's motion for detention ("Motion").  (*See* ECF Doc. 259; Non-document minutes of proceedings dated 2/24/26; ECF Doc. 341.)  The Government does not oppose reopening the detention hearing, but argues Mr. Watts should continue to be detained upon reconsideration.  (ECF Doc. 344.)  The Court has referred the Motion to the undersigned for resolution.  (Non-document order dated 2/24/26.)  For the reasons set forth below, the Motion is **DENIED**.

## I.      PROCEDURAL BACKGROUND

Following an FBI investigation, Mr. Watts and eighteen codefendants were charged in a 61-page indictment with conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A) and related charges. (ECF Doc. 1.)

Mr. Watts was charged with the conspiracy (Count 1) and use of a communications facility to facilitate a felony drug offense in violation of 21 U.S.C. § 843(b) (Count 16).

Mr. Watts was arraigned on May 6, 2025, and subsequently appeared before the undersigned for a detention hearing.  At the detention hearing, the government proffered: the 61-page indictment, including specific allegations regarding Mr. Watts's participation in the charged conspiracy (ECF Doc. 1); and the Pretrial Services Report dated May 6, 2025, which included information regarding Mr. Watts's criminal history and history of substance use (ECF Doc. 7). Mr. Watts proffered information regarding the length of his residence in the community, local family ties, his family's willingness to provide financial and other support, available housing, and physical limitations. He also presented the testimony of his mother, Darlene Baldwin.

On June 5, 2025, the undersigned ordered Mr. Watts detained pending trial ("Detention Order"), finding the government had met its burden to show by clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of any other person or the community.  (ECF Doc. 115.)  The Detention Order specifically outlined the information and findings that formed the basis for the Court's decision.  (*Id.* at p. 4.)

Mr. Watts filed a Motion for Reconsideration of Order of Detention and for Hearing on December 10, 2025, asserting that he had "found a residence which was not available at the detention hearing" and could "live with his mother at her residence."  (ECF Doc. 259.)  The Court denied the motion on December 30, 2025.  (ECF Doc. 261.)  Mr. Watts orally renewed the motion at the Final Pretrial Conference on February 24, 2026, and the Court initiated a referral to Pretrial Services for a home inspection.  (Non-document minutes of proceedings dated February 24, 2026.)  The Court then referred the matter to the undersigned to determine whether to reopen and reconsider the detention hearing.  (Non-document order dated February 24, 2026.)

On February 26, 2026, Pretrial Services filed a Release Status Report to the Court, informing the Court of the results of a collateral home assessment of the residence of Mr. Watts's mother Darlene Baldwin and stepfather Danny Baldwin.  (ECF Doc. 336.)  Mr. Baldwin admitted to having a firearm in the home, but returned a Third Party Firearms Receipt reflecting that the firearm and been moved into the possession of a third party.  Pretrial Services noted no other supervision concerns and found the home to be suitable for location monitoring should that condition be imposed by the Court.  The Release Status Report also highlighted the following information, which was known at the time of the detention hearing: Mr. Watts was unemployed and receiving worker's compensation benefits at the time of his arrest; he has a history of convictions involving drugs, firearms, and violence; and he reported weekly drug use and tested positive for cocaine at the time of his arrest.  The Report also noted that Ms. Baldwin reported to Pretrial Services in her initial collateral interview that she had no knowledge of Mr. Watts's substance abuse history, but then testified at the detention hearing about an incident where she found Mr. Watts unconscious in a parked car with a bag of cocaine in his lap.

Mr. Watts filed a Memorandum in Support of Reconsideration of Order of Detention and for Hearing on March 5, 2026.  (ECF Doc. 341.)  The Government filed a response in opposition on March 11.  (ECF Doc. 344.)  The matter is fully briefed and ripe for determination.

## II.     LAW AND ANALYSIS

Under 18 U.S.C. § 3142(f), a detention hearing "may be reopened":

> if the judicial officer finds that information exists [1] that was not known to the movant at the time of the hearing and [2] that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f)(2)(B).  Under this two-prong analysis, the court must consider first whether Mr. Watts has presented new information "that was not known to [him] at the time of the [initial

3

detention] hearing," and, if so, whether that new information "has a material bearing" on the detention determination.  *Id.*  The Sixth Circuit explains that the new information offered in support of reopening "must be of a nature that would increase the likelihood that the defendant will appear at trial and would show that the defendant is less likely to pose a danger to the community."  *United States v. Watson*, 475 F. App'x 598, 600 (6th Cir. 2012).  Because section 3142(f) contemplates only that a detention hearing "may" be reopened, district courts have discretion to determine whether to reopen the hearing.  *Watson*, 475 F. App'x at 601.

Here, Mr. Watts seeks to reopen his detention proceedings based on "significant changes of circumstances," namely that "[h]e now has found a residence which was not available at the detention hearing, that being, living with his mother and step father."  (ECF Doc. 341, p. 2.)  He reports that the home is in "a very upscale, safe neighborhood with police patrols throughout the day," that his mother has recently returned to work part time following time off due to a health concern, and that his "step father is not employed and at home."  (*Id.* at p. 7.)  Because his mother "is now more present at the home in recuperation" from her recent health concern, he argues "she can help and monitor [Mr. Watts] in his behavior."  (*Id.* at p. 8.)

In response, the Government asserts that the balance of factors the Court must weigh under 18 U.S.C. § 3142(g) continues to require a finding by this Court that "there are no conditions that would reasonable assure the safety of other persons and the community."  (ECF Doc. 344, pp. 4-6.)  In particular, the government asserts that: (1) the Court's analysis of three factors weighing in favor of detention—the nature and circumstances of the offence, the weight of the evidence, and the nature and seriousness of the danger posed by the defendant's release— remain unchanged by the new information provided by Mr. Watts; and (2) the fourth factor—the

4

history and characteristics of the defendant—still weighs in favor of detention, even when the availability of new housing with Mr. Watts's mother and step father is considered. (*Id.*)

In ruling on the government's motion for detention, the undersigned found that the government met its burden to demonstrate by clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of any other person and the community. (ECF Doc. 115, p. 3.) In support, the undersigned made the following findings:

(1) Nature and circumstances of offense (18 U.S.C. 3142(g)(1)): The defendant is charged with conspiracy to distribute and possess with intent to distribute cocaine and use of a communication facility to facilitate a felony drug offense, offenses that are inherently dangerous to the community. The circumstances increase that concern. In an intercepted call with co-defendant JC, an alleged leader of the drug trafficking organization (DTO), the defendant said he needed to "link up" to give JC "what . . . I got" and get "a seven game . . . so I can get busy," and JC answered that he should "come pay [him] off" and that he would give the defendant "the whole thing." The defendant also talked to JC about an incident where his mother emptied a bag of his drugs "to save somebody's life or whatever," and JC said he should tell her "you gotta give me $200 for that." The defendant answered a text from JC asking "What u hit for me" by saying he sent "$200 on Cash app" and would "Get [him] more soon," with JC answering "800." In an intercepted call, he told JC he wanted to "try to grab a little something . . . a little seven or something" and would have "something lite from the bank" when JC brought him "something." In another text, JC told the defendant it was "Cash app business time." The grand jury found probable cause to believe that the defendant was engaged in trafficking cocaine that he received from JC. The defendant's apparent participation in trafficking cocaine as part of a larger conspiracy weighs against release.

(2) Weight of evidence (18 U.S.C. 3142(g)(2)): Although the allegations and intercepted communications suggest that the defendant was a more minor player in a larger conspiracy, trafficking poses a danger that weighs against release.

(3) History and characteristics of defendant (18 U.S.C. 3142(g)(3)): The defendant was born in Ohio and is a high school graduate. His mother and stepfather attended his detention hearing in support, and his mother testified. He is receiving worker's compensation benefits for an injury. He has drug convictions for: narcotic drug violation and possession of drug paraphernalia (2014, Arizona), drug possession (F5, 2018 & 2022), and drug abuse (2023), with a probation violation in 2023. He was also convicted of attempted tampering with evidence (F4, 2018), improperly handling firearms in a motor vehicle (F4, 2018), aggravated assault (F4, 2019), domestic violence (M1, 2019), and attempted domestic violence (M1, 2022). He reports weekly use of marijuana and cocaine and his drug screen was positive for cocaine. During the charged time period and through his arrest, the defendant lived

5

and worked at a home owned by his mother that caters to mentally challenged individuals, some of whom struggle with substance abuse. The defendant's mother described the incident from the intercepted call above, saying she found the defendant unconscious in a car parked in front of the home she operates with a bag of cocaine in his lap. She was not able to rouse him and disposed of the cocaine. She said she was not aware of the defendant using or selling drugs in the home, but agreed that she lived elsewhere and would not have seen if there were a lot of people coming in and out of the home. She testified that the defendant is welcome to return to living and working in the home, but agreed that she would not be able to watch him all day if he were released. She testified that the defendant has never been violent to her, but also said the defendant's current girlfriend was the victim in his domestic violence conviction. The defendant's history of drug abuse and violence, and the vulnerable population in the home he proposes to return to, both weigh against release.

(4) Nature and seriousness of danger to any person or community that would be posed by defendant's release (18 U.S.C. 3142(g)(4)): Given the defendant's history of drug abuse and violence, his ongoing drug abuse, his alleged participation in large-scale drug trafficking conspiracy, and vulnerable population of individuals with mental and substance abuse conditions to whom he would have regular, unsupervised access, this factor weighs against release.

(*Id.* at p. 4.)

Beginning with the first prong of section 3142(f), the Court finds Mr. Watts has identified information that was not known to him at the time of the detention hearing, namely that he may now reside with his mother and stepfather in their residence if he is released from custody, and that Pretrial Services has confirmed the residence it is suitable for location monitoring.

The question under the second prong of section 3142(f) is whether the availability of this new housing option has a "material bearing" on the Court's finding that the government met its burden to show by clear and convincing evidence there is no condition or combination of conditions of release that will reasonably assure the safety of any other person or the community if the defendant is released.  The Government is correct that the new information has no bearing on the Court's determination that first two detention factors, the nature and circumstances of offense and the weight of the evidence, weigh in favor of detention.  But the Court did consider Mr. Watts' intent to reside in housing for a "vulnerable population of individuals with mental

6

and substance abuse conditions" in analyzing the second two detention factors, i.e., the history and characteristics of the defendant and the nature and seriousness of any danger posed by his release. (ECF Doc. 115, p. 4.) The Court must therefore determine whether the availability of alternate housing with Mr. Watts's mother tips the scales on the final detention determination.

Having considered all of the evidence, including the new evidence highlighted in Mr. Watts's motion, the Court finds the government continues to meet its burden to show by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person or the community if the defendant is released from custody. Accordingly, for the reasons detailed below, the Court finds Mr. Watts has not presented new evidence that has a "material bearing" on the final detention determination.

First, the alternate housing now available to Mr. Watts does not outweigh the significant evidence and information that continues to support detention, including: the inherently dangerous nature of the pending drug charges; recorded calls quoted in the indictment which detail multiple apparently trafficking-related communications between Mr. Watts and a leader of an alleged drug trafficking organization; a criminal history significant for drug abuse, firearms, and violence; and active, ongoing drug abuse at the time of his arrest. (*See* ECF Doc. 115, p. 4.)

Second, while Mr. Watts's mother, Ms. Baldwin, and his stepfather have been supportive throughout these proceedings and have now expressed a willingness to house him and provide some additional level of supervision if he is released, certain evidence and information in the record undermines the Court's confidence in the full benefit of such supervision. For example, Pretrial Services notes that Ms. Baldwin denied knowledge of his substance abuse history during her initial collateral interview (ECF Doc. 336, p. 2; *see* ECF Doc. 7, p. 3), but later testified that she was aware of his substance abuse history and had found him unresponsive with a bag of

7

cocaine on his lap and then destroyed the cocaine "for his safety and for his life" (ECF Doc. 254, pp. 36-37, 40, 47-48, 84-85; *see* ECF Doc. 336, p. 2).  She also testified that she did not know Mr. Watts to sell drugs, only to use drugs (ECF Doc. 254, p. 40), but later testified that she was fearful when she destroyed the cocaine she found in Mr. Watts's lap because "they," i.e., someone like the people named in the indictment, might try to kill her for it (*id.* at pp. 37, 56-57). This stated fear that she would be in danger for destroying the cocaine does not clearly align with a belief that Mr. Watts purchased the cocaine for his own personal use.  Further, a recorded call quoted in the indictment suggests the incident in which Ms. Baldwin reportedly destroyed a bag of cocaine "for [Mr. Watts's] safety and for his life" while fearing for her own life, took place in or around May 2024.  (ECF Doc. 1, pp. 18-19, ¶ 51.)  Despite finding Mr. Watts in the described circumstances in May 2024—i.e., unresponsive, with cocaine in his lap, in a car parked in front of a home housing individuals with mental and substance abuse conditions, a home that she owned and operated—Ms. Baldwin nevertheless allowed Mr. Watts to continue to live and work unsupervised in that home until the time of his arrest, nearly a year later.  (ECF Doc. 7, pp. 1-2.) In this context, the Court does not have full confidence in the adequacy of any supervision or the veracity of any reporting that would be provided by Mr. Watts's family upon his release.

For the reasons explained above, the Court finds that Mr. Watts has not satisfied his burden to present new information that has a "material bearing" on whether there are conditions of release that would "reasonably assure the safety of any person and the community," as necessary to support reopening of his detention hearing pursuant to § 3142(f)(2)(B).

### III.     CONCLUSION

For the reasons set forth herein, Defendant's Motion for Reconsideration of Order of Detention and for Hearing (ECF Doc. 259; Non-document minutes of proceedings dated 2/24/26; ECF Doc. 341) is **DENIED**.

**IT IS SO ORDERED**.

Dated: April 3, 2026

*s/Amanda M. Knapp*_____
United States Magistrate Judge